IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL BUILDERS & DEVELOPERS INC.,<br><br>Defendant. | Case No. 24 C 9706<br><br>Judge Joan H. Lefkow |

**OPINION AND ORDER**

The Construction and General Laborers' District Council of Chicago and Vicinity (the Union) brings this action against Global Builders and Developers Incorporated (GBDI), under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 *et seq*. The Union asserts that GBDI owes approximately $170,000 in fines—the award decided by the Joint Grievance Committee (Grievance Committee). GBDI argues the award was not final and that the Grievance Committee's decision was outside the scope of the parties' agreement. Both parties move for summary judgment. Because the issues raised in the cross-motions are largely the same, this opinion addresses both motions. For the reasons stated below, the Union's motion (Dkt. 24) is granted, and GBDI's motion (Dkt. 27) is denied.

**BACKGROUND**[1]

GBDI is a construction company operating in Chicago, Illinois. Local 6 is a local union affiliated with the Union. On November 10, 2020, a general contractor, Global Builders, Inc.

---

[1] Facts are drawn from those included in parties' Rule 56 disclosures and that were admitted to by the other party.

(General Contractor) entered into an agreement with Gateway Residential Partners, LLC to construct 161 residential apartments at 2050 W. Ogden Ave. in Chicago (the Project). On March 4, 2022, the General Contractor hired GBDI to provide one union laborer for the Project to help with cleanup on the construction site, including vacuuming, mopping, and cleaning windows. On the same day, GBDI signed an agreement with Local 6 (Longform Agreement). The Union has a collective bargaining agreement (CBA) with the Chicago Area Independent Contractors Association, and Paragraph 2 of the Longform Agreement binds GBDI to the Union's CBA.

The CBA provides that "any dispute concerning the interpretation or application of this Agreement between an Employer and the Union shall be adjusted by the particular Employer and Union, in the first instance . . . . In the event that the matter is not settled, the Union may file a written grievance, which shall be submitted to a Joint Grievance Committee." (Exhibit 2, Dkt. 26 at 44.) The Grievance Committee is composed of an equal number of union and management representatives, each of whom has equal voting power. The Grievance Committee's resolution of a grievance is "final and binding." (Exhibit 1, Dkt. 26 at 12.) Article 11, Paragraph 2 of the CBA states that the "determination of the [Grievance Committee] shall be governed by majority vote" and, if "decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon the parties." (Exhibit 2, Dkt. 26 at 44.) If the Grievance Committee is deadlocked on disposition of the grievance, the matter is referred to arbitration.

On July 27, 2022, Local 6 filed Grievance No. 22-44 alleging that GBDI violated Article 2 of the CBA by using non-union labor. Article 2 requires all new employees to join the Union and remain members in good standing as a condition of continued employment. On October 10, 2022, Local 6 filed an additional grievance, No. 22-64, asserting that GBDI violated Article 4 of

2

the CBA by subcontracting to a non-signatory company. Article 4 provides, in part, that the employer signatory agrees it will only contract or subcontract work covered by the CBA to persons, firms, and corporations that are signatories to the CBA.

The Grievance Committee conducted a hearing on both grievances on December 14, 2023. At the hearing, GBDI President Carmen Gratace represented GBDI, and Dexter Ziemann, Local 6's business manager, represented Local 6. Joanna Barrera, the Union's attorney, also attended. At the hearing, Gratace contended that GBDI did not use non-bargaining unit employees, nor did it subcontract work to entities that did not have a labor contract with the Union. Gratace also asserted that GBDI was merely one subcontractor at the Project and had only been hired to provide one Union laborer for the Project. The Union asserts that Gratace told the Grievance Committee that he would be able to provide documents supporting his position. GBDI disputes this and asserts that Gratace told the Union that it would need to provide documentation showing GBDI was the responsible party.[2]

After the hearing, the Grievance Committee sent a letter to GBDI informing it that "the [g]rievances were upheld in their entirety." (Exhibit F, Dkt. 26 at 255.) The letter instructed GBDI to "(2) pay $334.33 to the Laborers' Pension and Welfare Funds pursuant to the fringe benefit audit for the time period of March 4, 2022, through November 30, 2022 . . ." and to "(3) provide the Joint Grievance Committee with the following documents by Friday, December 29, 2023: a. the construction contract for final cleaning on the . . . Project; b. the construction contract, including the date [GBDI] turned the Project over for occupancy; and c. the contract signed between [GBDI] and Gateway covering the project." (*Id.*)

---

[2] As discussed further below, this is not a material dispute, due to the court's limited jurisdiction to review the Grievance Committee's reasoning, decision-making, and remedy.

The letter further stated that if the documents listed in Item 3 were not provided to the Grievance Committee by December 29, 2023, GBDI was to pay $115,000 to the Laborers' Charitable Foundation, in addition to 50 percent liquidated damages, which totaled $57,500. The letter further stated that if, seven days after December 29, 2023, GBDI did not pay the Laborers' Charitable Foundation $115,000 plus $57,500, GBDI must also pay the Union liquidated damages equal to 10 percent of the monetary award and all court costs and reasonable attorney fees incurred by the party enforcing the award.

GBDI paid $334.33 pursuant to the fringe benefit audit. It did not provide the documents listed in Item 3, nor did it pay the amounts the letter called for if the documents were not produced. Instead, on December 29, 2023, GBDI President Gratace sent Barrera a letter insisting that GBDI could not provide the documents in Item 3 because it was not the general contractor on the job. Gratace insisted that the Union, not GBDI, should provide documents to prove its claims. Barrera responded via email the same day, writing that the onus was on GBDI to provide the documents and prove that it did not violate the bargaining agreement. GBDI did not respond to Barrera, did not provide any documents, did not pay the award, and did not file a lawsuit challenging the validity of the award. Each member of the Grievance Committee has since signed affidavits attesting that they considered the December 14, 2023, award letter to be their final decision.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The law considers a dispute genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lord v. Beahm, 952 F.3d 902, 903 (7th Cir. 2020)

4

(quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba* v. *Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted).

The moving party "bears the burden of demonstrating the absence of genuine issues of material fact." *LaRiviere* v. *Bd. of Trs. of S. Illinois Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (citation omitted). If the moving party meets that burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer* v. *Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) (citation omitted).

## ANALYSIS

"An arbitration award rendered by a Joint Grievance Committee comprised of representatives of labor and management is governed by the same principles of enforcement and review as is a decision made by an individual arbitrator." *Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO* v. *J. Pease Const. Co.*, 541 F. Supp. 1334, 1336 (N.D. Ill. 1982) (citing *General Drivers, Warehousemen & Helpers Local 89* v. *Riss & Co.*, 372 U.S. 517 (1963)). Therefore, the court applies arbitration case law in its analysis, while noting that "a joint committee is not a genuine arbitration subject to the Federal Arbitration Act and the full requirements of impartiality that apply to genuine arbitration." *Merryman Excavation, Inc.* v. *Int'l Union of Operating Eng'rs, Loc. 150*, 639 F.3d 286, 290 (7th Cir. 2011).

GBDI insists the court cannot enforce the award against it because it lacks subject matter jurisdiction where the Grievance Committee's decision was not final, and because the statute of limitations on challenges to Grievance Committee awards has not yet begun running. GBDI's arguments on each of these grounds are unsuccessful.

5

## I. Jurisdiction

The Union asserts the court has jurisdiction and venue under § 301(a) and (c) of the LMRA, 29 U.S.C. § 185. Section 301 of the LMRA gives a district court jurisdiction over actions by labor organizations in the district in which the organization maintains its principal office or in any district in which its officers or agents are representing or acting for employee members. 29 U.S.C. § 185(c). The Union maintains its principal office in Illinois, within this court's geographic jurisdiction, and it represents its members in this district by negotiating collective bargaining agreements on behalf of affiliated local unions.

Nevertheless, in its answer, GBDI avers that this court "lacks subject matter jurisdiction under Section 301(a) because the [Grievance Committee's] Decision does not arise out of a violation of the Collective Bargaining Agreement between GBDI and the Union and does not derive its remedy from the Agreement." (Dkt. 22 at ¶ 12.) As GBDI implicitly concedes, it is incorrect.[3] The grievances alleged violations of two articles of the CBA, and the Grievance Committee upheld the grievances "in their entirety." (Exhibit F, Dkt. 26 at 255.) The decision clearly arose from alleged violations of the CBA. Furthermore, the Seventh Circuit has held that "[a] failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301 jurisdiction." *Merryman Excavation*, 639 F.3d at 290 (quoting *General Drivers*, 372 U.S. at 519). A failure to comply with the Grievance Committee's award is precisely what the Union alleges here, landing this action squarely within the court's jurisdiction under § 301 of the LMRA.

---

[3] Though GBDI later filed a motion for summary judgment, implying it changed its position on the court's jurisdiction, the court must be satisfied jurisdiction exists before proceeding. *Wisconsin Knife Works* v. *Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986) ("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.").

As to the extent of the court's jurisdiction, § 301 provides federal courts jurisdiction to enforce "final and binding" arbitration awards issued pursuant to a collective bargaining agreement. *Lippert Tile Co.* v. *Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Loc. 5*, 724 F.3d 939, 944 (7th Cir. 2013) (citing *General Drivers*, 372 U.S. at 519). Courts are essentially limited to applying the terms of a collective bargaining agreement, so when such an agreement provides for submitting contractual disputes to an arbitrator (or, in this case, a Grievance Committee), the court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Lippert Tile*, 724 F.3d at 944 (citing *United Steelworkers* v. *Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)). "[T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." *United Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

Moreover, courts must not "rule on the potential merits of the underlying claims." *AT & T Techs., Inc.* v. *Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Monee Nursery & Landscaping Co.* v. *Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, 348 F.3d 671, 675 (7th Cir. 2003) (citation omitted) ("[A] court's examination of an arbitration award itself is extremely limited."). Indeed, a court's review is so limited that the arbitrator's award will be enforced "even if the 'court is convinced [the arbitrator] committed [a] serious error' of fact or law in reaching his decision." *Monee Nursery*, 348 F.3d at 675 (quoting *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) (per curiam)). Accordingly, the court limits its review to whether the parties agreed to submit grievances, such as those raised against GBDI, to the Grievance Committee.

7

Parties agree that the Longform Agreement binds GBDI to the Union's collective bargaining agreement. They also agree that the CBA says that if an employer and the Union cannot settle "any dispute concerning the interpretation or application of this Agreement . . . the Union may file a written grievance, which shall be submitted to a Joint Grievance Committee." (Dkt. 31 at ¶ 5.) GBDI argues, however, that the grievances (alleged violations of the CBA) were not related to the CBA because GBDI was not the party who committed the violations, and it did not agree to arbitrate the issues addressed in the documents the Grievance Committee calls for as a remedy. But the court returns to the only question it has jurisdiction to answer: "whether the reluctant party did agree to arbitrate the grievance," not whether the parties or the remedies were appropriate. *Warrior & Gulf Nav. Co.*, 363 U.S. at 582. By signing the Longform Agreement, GBDI agreed to arbitrate the Union's grievances concerning violations of the CBA and, as stated, the court has jurisdiction to enforce the resulting award.

**II. Finality of Award**

A Grievance Committee award must be "final and binding" for a court to have jurisdiction to enforce it. *Lippert Tile*, 724 F.3d at 944. An award is final when "an arbitrator believes the assignment is completed[.]" *McKinney Restoration, Co.* v. *Illinois Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers*, 392 F.3d 867, 872 (7th Cir. 2004). GBDI argues that the Grievance Committee's decision was not final and binding because it did not decide whether GBDI had violated the CBA. GBDI points to the award letter from the Grievance Committee, which instructed GBDI to provide the Grievance Committee with certain documents by December 29, 2023, or pay $115,000 to the Laborers' Charitable Foundation plus $57,500 in liquidated damages. GBDI asserts that "it can be inferred that the [Grievance Committee] had not yet determined whether GBDI was in violation" of the CBA and that the Grievance

Committee requested the documents to gain additional evidence to make that determination, leaving it with a substantive task to perform. (Dkt. 28 at 8.)

But the court need not 'infer' what the Grievance Committee's intentions were. The Union submitted affidavits from the four members of the Grievance Committee affirming they believed and intended that their decision and award be final and binding. (Dkt. 34-1 at ¶ 6–7.) ("We found [GBDI] liable for violating the CBA . . . and we imposed a final remedy . . . . It was the belief of myself and the other members of the [Grievance Committee] on December 14, 2023, and it remains our belief now, that our decision on that day was final and binding, with no further proceedings necessary other than possible enforcement in court."); (*see also* Dkt. 34-2 at ¶ 6–7; Dkt. 34-3 at ¶ 6–7; Dkt. 34-4 at ¶ 6–7.) Moreover, the Seventh Circuit in *McKinney Restoration* noted, in reviewing the award letter before it, that "[t]he award further declared that if the contractor failed to abide by its terms and legal action was necessary to enforce the award, then the contractor would be responsible for costs, legal fees, and interest. That is the language of a final award disposing of all issues before the arbitrators, not an interim one." *McKinney Restoration*, 392 F.3d at 872. Almost the same language is present in the award letter here. (Exhibit F, Dkt. 26 at 255) ("If the foregoing relief is not fully implemented within seven (7) days of this ruling, the Employer shall also pay the Chicago Laborers' District Council, in addition to the foregoing relief, liquidated damages equal to ten percent (10%) of the monetary award and all court costs and reasonable attorney fees actually incurred by the party enforcing the award."). The award was final and binding, and the court may enforce it.

### III. Additional Challenges to Enforceability

Finally, the court may enforce the Grievance Committee's award because GBDI's challenge to the award via its affirmative defenses is impermissible and precluded by the statute of limitations on such challenges.

#### A. Affirmative Defense Challenge

First, GBDI is not attempting to vacate the Grievance Committee's award outright but is instead raising affirmative defenses in response to the Union's suit against it to enforce the award. This is an impermissible maneuver in the Seventh Circuit. *Chauffeurs, Teamsters, Warehousemen & Helpers, Loc. Union No. 135* v. *Jefferson Trucking Co.*, 628 F.2d 1023, 1025 (7th Cir. 1980) ("We hold that the defendant's failure to move to vacate the arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award.").

#### B. Statute of Limitations

Second, the statute of limitations on challenges to the award has long since run. "[T]he United States Supreme Court has held that, as a matter of federal law, timeliness under section 301 is to be determined 'by reference to the appropriate state statute of limitations,'" as the LMRA itself provides no statute of limitations for actions challenging arbitration awards. *Plumbers' Pension Fund, Loc. 130, U.A.* v. *Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985) (citing *UAW* v. *Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05 (1966)). The applicable state statute is Illinois's version of the Uniform Arbitration Act, 710 Ill. Comp. Stat. 5/12(b), which provides a 90-day statute of limitations to challenge the validity of an arbitration award. *Domas*, 778 F.2d at 1268.

10

The 90-day limit is rigid. *See Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO* v. *Rabine*, 161 F.3d 427, 433–34 (7th Cir. 1998) ("[I]f there is an exception to the 90–day limitations period we have not encountered it in the past and we do not create one today. The rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up."). The statute of limitations applies equally to a Grievance Committee decision as it would to an arbitration decision. *Painters' Dist. Council No. 30* v. *Rock-It Interiors, Inc.*, 190 F. Supp. 3d 803, 810 n.4 (N.D. Ill. 2016); *Teamsters Loc. No. 579* v. *B & M Transit, Inc.*, 882 F.2d 274, 275, 278 (7th Cir. 1989). The statute of limitations begins running "after delivery of a copy of the award" to the would-be challenger. 710 Ill. Comp. Stat. 5/12(b). The Grievance Committee's award letter was delivered to GBDI on December 14, 2023. The court takes judicial notice that the statute of limitations would have run by March 13, 2024.

GBDI first argues that the statute of limitations starts running when the Grievance Committee comes to a final decision, but because the decision letter presented GBDI with two options, the decision was not final and so the statute of limitations never started running. As explained in the preceding section, the Grievance Committee's decision was final and binding. The statute of limitations began running when GBDI received the letter on December 14, 2023.

GBDI next argues that the statute of limitations does not apply here at all because issues not submitted to the Grievance Committee are not subject to the 90-day time limit, and the "remedy provided in the [Grievance Committee] decision, the provision of certain non-existent contracts, was not related to an issue submitted to arbitration." (Dkt. 28 at 9.) As explained above, the issues submitted to the Grievance Committee were claimed violations of the CBA. The documents were a remedy devised by the Grievance Committee after it evaluated the

11

violations, and, as the Union correctly points out, the Grievance Committee's choice of remedy is not subject to the court's review. *See Monee Nursery*, 348 F.3d at 678 (citing *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)).

### C. Impossibility of Performance

GBDI also asserts that performance of the award is impossible for it because it was not the general contractor on the Project and so does not have the documents called for in Item 3 of the award letter. But GBDI can perform by paying the amounts called for if it failed to provide the documents by December 29, 2023. *See BPS Guard Servs., Inc.* v. *Int'l Union, United Plant Guard Workers of Am. (UPGWA)*, No. 89 C 7510, 1993 WL 293997, at *1–2 (N.D. Ill. Aug. 4, 1993), *aff'd sub nom. BPS Guard Servs., Inc.* v. *Int'l Union of United Plant Guard Workers of Am., Loc. 228*, 45 F.3d 205 (7th Cir. 1995) (rejecting employer's impossibility defense to an arbitrator's award, acknowledging that "[i]t may have been impossible" for the employer to reinstate the wrongfully terminated employee to her former position, "but it was not impossible to make her whole"). Performance of the Grievance Committee's award is not impossible for GBDI.

### D. Acceptance of Contract Terms

Finally, GBDI argues that applying the 90-day statute of limitations to enforce a decision that wrongly treats GBDI as the general contractor "would run up against the more fundamental underlying policy that parties, including unions and employers, should … not [be] forced to submit … to terms they did not accept." (Dkt. 28 at 12–13) (quoting *Rabine*, 161 F.3d at 432). Such terms, GBDI insists, include "producing documents that do not exist and moving to vacate an award that was not yet final." (Dkt. 28 at 13.) But GBDI was indisputably party to the CBA and accepted its terms when it signed the Longform Agreement.

12

GBDI then attempts to distinguish itself from the employer-defendant in *Rabine*, who the court did not allow to raise an affirmative defense challenge to an arbitration award, by noting that "[w]hat prevented the employer in *Rabine* from retaining the right to challenge the outcome of the arbitration was their 'decision to sit on their collective hands,' therefore waiving the right to challenge the outcome later." (Dkt. 28 at 13) (quoting *Rabine*, 161 F.3d at 432). GBDI asserts that it took action by paying $334.33 to the Laborers Pension and Welfare funds pursuant to the fringe benefit audit and by "contest[ing] the order to produce non-existent documents to the representative of the [Grievance Committee] within 7 days." (Dkt. 28 at 13.)

But properly challenging a Grievance Committee award requires a motion; sending an email to the Union's lawyer does not suffice. 710 Ill. Comp. Stat. 5/12(b) ("An application [to vacate an award] shall be made within 90 days after delivery of a copy of the award to the applicant[.]"); 710 Ill. Comp. Stat. 5/15 ("An application to the court under this Act shall be by motion[.]"); *and see Sullivan* v. *Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996) (citations omitted) ("[A] defendant's failure to move to vacate an arbitration award within the prescribed time period for such a motion precludes it from seeking affirmative relief in a subsequent action to enforce the award."). GBDI, after receiving Barrera's response to its email, did not reply, did not submit the documents, did not pay the award, and did not file a motion challenging the award. Instead, it waited until the Union filed this action and attempted to prevent the enforcement of the award via affirmative defenses. In other words, GBDI "made the decision to sit on their collective hands." *Rabine*, 161 F.3d at 432. As a result, the award may be enforced against it.

## **CONCLUSION AND ORDER**

For the forgoing reasons, the Union's motion for summary judgment (Dkt. 24) is granted. GBDI's motion is denied. (Dkt. 27.) The clerk is directed to enter judgment in favor of the Union

13

on all counts. GBDI is to pay the amounts awarded in the Grievance Committee decision: $115,000 to the Laborers' Charitable Foundation, 50 percent liquidated damages totaling $57,500 to the Laborers' Charitable Foundation, 10 percent liquidated damages of the monetary award to the Chicago Laborers' District Council, and all court costs and reasonable attorney fees incurred by the Union in enforcing the award.[4]

Date: December 4, 2025

_____
U.S. District Judge Joan H. Lefkow

---

[4] The Union may present a final judgment for a sum certain including interest. Attorney fees shall be handled according to LR 54.3.